UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA Y. MYLES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>Defendant. | Case No. 3:17-cv-00524-LRH-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 14, 17 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 14.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal. (ECF Nos. 17, 18.) Plaintiff filed a reply brief. (ECF No. 19.)

After a thorough review, the court recommends that Plaintiff's motion be granted; the Commissioner's cross-motion be denied; and, that the matter be remanded for further administrative proceedings consistent with this Report and Recommendation.

## I. BACKGROUND

On June 3, 2013, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning February 12, 2012. (Administrative Record (AR) 222-234.) The applications were denied initially and on reconsideration. (AR 130-134, 140-147.)

///

1    Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 148.)
2 ALJ Ryan Johannes held a hearing on February 16, 2016. (AR 41-67.) Plaintiff, who was
3 represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was
4 also taken from a vocational expert (VE). On March 24, 2016, the ALJ issued a decision finding
5 Plaintiff not disabled. (AR 20-34.) Plaintiff requested review, and the Appeals Council denied the
6 request, making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

7    Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).
8 Plaintiff argues that the severe nature of her mental impairments became clear after the consultative
9 examining psychologist and reviewing psychologists had reviewed the record, examined Plaintiff,
10 and rendered their opinions. Specifically, Plaintiff was admitted on an inpatient basis three times
11 after they rendered their opinions, and was given a new diagnosis of schizoaffective disorder as
12 well as a notation of bipolar disorder. Plaintiff contends that the ALJ relied on the opinions of the
13 evaluating and reviewing psychologists, even though they did not have the benefit of reviewing
14 these records or examining Plaintiff after these events. Plaintiff argues that the ALJ should have
15 utilized the help of a medical expert to fully and fairly develop the record.

16    The Commissioner argues that the ALJ found Plaintiff's post-traumatic stress disorder
17 (PTSD) to be a severe impairment at step two, and then considered Plaintiff's PTSD and other
18 mental impairments, including depression, anxiety, and bipolar disorder in assessing Plaintiff's
19 residual functional capacity (RFC), and found Plaintiff retained the mental RFC to perform work
20 with occasional public interaction. The Commissioner contends that the ALJ's finding that
21 Plaintiff had no mentally disabling limitations and could work with a limitation in social
22 interaction was supported by: the objective medical record which showed Plaintiff's symptoms
23 were controlled or stable with treatment; the opinions of State agency psychological consultants
24 R. Torigoe, Ph.D., and Susan Kotler, Ph.D., that Plaintiff had no mental work-related limitations;
25 and, the opinion of consultative psychological examiner Robert Wildman, II, Ph.D., that Plaintiff
26 had only mild to moderate mental limitations. The Commissioner contends that the ALJ was
27 permitted to rely on those opinions that are consistent with the evidence no matter when rendered.
28 In addition, the Commissioner asserts that the ALJ reviewed the entire record, including the

1  evidence of Plaintiff's three hospitalizations after the opinions were rendered, and found the
2  objective record as a whole did not show Plaintiff had a disabling mental condition. The ALJ
3  properly noted that treatment notes showed her symptoms were well controlled or stable with
4  medication, and the record also showed Plaintiff was not always compliant with taking her
5  medication, but her symptoms were brought under control during hospitalizations where she
6  restarted medications.

7  The Commissioner also disputes that the ALJ was required to obtain a medical expert to
8  satisfy the duty to develop the record, which is only triggered when the evidence is ambiguous or
9  the record is inadequate to allow for proper evaluation of evidence. The Commissioner asserts that
10 the ALJ had Plaintiff's treatment records, a consultative exam, and assessments from two state
11 medical agency experts, as well as the opportunity to observe and question Plaintiff at the hearing.

12 The Commissioner acknowledges that the ALJ did not explicitly consider the
13 schizophrenia diagnosis, but found Plaintiff had a severe mental impairment and considered her
14 impairments when assessing her ability to perform mental work activities, and discussed the
15 treatment records in question.

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job

1  duties of the [past] occupation as generally required by employers throughout the national
2  economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and
3  citation omitted).
4      If the claimant can still do past relevant work, then he or she is not disabled for purposes
5  of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,
6  a claimant who is physically and mentally capable of performing past relevant work is not disabled,
7  whether or not he could actually obtain employment.").
8      If, however, the claimant cannot perform past relevant work, the burden shifts to the
9  Commissioner to establish at step five that the claimant can perform work available in the national
10 economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144.
11 This means "work which exists in significant numbers either in the region where such individual
12 lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do
13 the work he or she did in the past, the Commissioner must consider the claimant's RFC, age,
14 education, and past work experience to determine whether the claimant can do other work. *Yuckert*,
15 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a
16 vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.
17 1999).
18     "The grids are matrices of the four factors identified by Congress—physical ability, age,
19 education, and work experience—and set forth rules that identify whether jobs requiring specific
20 combinations of these factors exist in significant numbers in the national economy." *Lockwood v.*
21 *Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and
22 citation omitted). The Grids place jobs into categories by their physical-exertional requirements,
23 and there are three separate tables, one for each category: sedentary work, light work, and medium
24 work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of
25 the numbers of unskilled jobs that exist throughout the national economy at the various functional
26 levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find
27 work, including the claimant's age, education and work experience. *Id*. For each combination of
28 factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the

national economy in that category. *Id.*

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through September 30, 2014, and had not engaged in substantial gainful activity since the alleged onset date of February 12, 2012. (AR 25.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: cervical degenerative disc disease and PTSD. (AR 25.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 26-27.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except she was limited as follows: she could lift and carry thirty pounds occasionally, and fifteen pounds frequently; she could occasionally climb stairs and ramps; she could never climb ladders, ropes or scaffolds; she could engage in frequent balancing and kneeling; she could occasionally stoop, crouch, and crawl; she could occasionally reach above shoulder level; she could frequently handle and finger; she could occasionally engage in work involving moving mechanical parts and around unprotected heights; and, she could occasionally interact with the public. (AR 27.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 32-33.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the

1  national economy that Plaintiff could perform, including: order caller (Dictionary of Occupational
2  Titles (DOT) 209.667-014), router (DOT 222.587-038), and mail clerk (DOT 209.687-026).
3  (AR 33.) As a result, the ALJ found Plaintiff not disabled from February 12, 2012 through the date
4  of the decision. (AR 34.)

**B. Analysis**

Plaintiff argues that the severe nature of her mental impairments became apparent after the evaluating and reviewing psychologists rendered their opinions. After they had rendered their opinions, Plaintiff was held on an inpatient basis on three occasions in 2014 and 2015: (1) from August 26, 2014 to September 8, 2014; (2) from January 12, 2015 to January 28, 2015; and, (3) from May 16, 2015 to July 1, 2015. As a result, Plaintiff contends that the ALJ should have utilized the help of a medical expert as part of the ALJ's duty to fully and fairly develop the record, since the ALJ did not have the medical education and experience to interpret the raw medical data on his own. In addition, Plaintiff asserts that the ALJ made no mention of the new diagnoses rendered in these subsequent inpatient stays, including schizoaffective disorder.

**1. Summary of Plaintiff's Mental Health Records and Opinions**

The first records of Plaintiff's mental health impairments are progress notes from Northern Nevada Adult Mental Health Services (NNAMHS) from December 12, 2013. (AR 384-389.) Plaintiff reported PTSD, depression and anxiety stemming from two events: (1) being rescued from a burning building in 1997 or 1998 in Brooklyn, New York, and (2) being traumatized by the events of September 11, 2011, because she lived in proximity to the World Trade Center. She denied a history of previous counseling or medications. She denied suicidal ideation or hallucinations. She had a somewhat flat affect, and an anxious mood. She had difficulty constraining her responses to the questions asked, though she was somewhat cooperative. She had poor insight and judgment. The diagnostic impression was anxiety disorder.

She underwent a psychiatric evaluation at NNAMHS on January 15, 2014. (AR 408-413.) She complained of depression, anxiety and sleep problems. She reported a fear of not being able to get out of her apartment, difficulty concentrating, and hypervigilance. She also mentioned being arrested in what she believed was a case of racial profiling. She had experienced a depressed mood

on and off since the arrest. She was agitated, with full affect, and logical and relevant thought processing. Her memory was intact, as was her attention and concentration. She had average intellectual function, and intact judgment and insight. She was diagnosed with PTSD, and was referred for counseling and prescribed a low dosage of Zoloft, as well as Vistaril for anxiety.

Following submission of her applications for disability benefits, Dr. Wildman performed a psychological evaluation and rendered his opinions on January 24, 2014. (AR 401-06.) Dr. Wildman assessed Plaintiff with PTSD associated with significant levels of depression. He opined she could understand, remember and carry out simple, detailed, and even mildly complex instructions, and was mildly impaired in her ability to interact with co-workers, supervisors, and the public. She was moderately impaired in her ability to maintain concentration and attention, which kept her restricted to detailed tasks. Prior to that time, she reported she had never been seen on an inpatient basis for her mental health issues. Dr. Wildman observed her as having a mood within normal limits, a normal appearance, she was internally organized and consistent, and was very friendly and forthcoming.

On February 7, 2014, Dr. Torigoe opined Plaintiff had no restriction in activities of daily living; had mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; that she retained the capacity to perform detailed tasks, working with others and adapting to workplace changes; and, that her mental health issues were non-severe. (AR 74-75.)

On August 12, 2014, Dr. Kotler opined Plaintiff had no restriction in activities of daily living, and mild difficulties in maintaining social functioning, concentration, persistence or pace, affirming Dr. Torigoe's findings. (AR 104-05.)

Approximately seven months after Dr. Wildman rendered his opinions, things took a drastic turn insofar as Plaintiff's mental health was concerned. On August 25, 2014, Plaintiff was taken to the Renown Regional Medical Center Emergency Department by police, after she had been found in the street screaming at passing cars and threatening people, and expressing suicidal and homicidal ideations and exhibiting paranoid delusions. She was evaluated at Renown, and had to remain in restraints. The impression was psychosis with underlying anxiety and depression. She

1  was placed on a legal hold and transferred to a psychiatric facility for evaluation and treatment.
2  During her inpatient stay, she was angry and accusatory, had poor concentration, was suspicious
3  of staff, and had poor insight, judgment and impulse control. She was treated with an antipsychotic
4  drug and continuously improved. She was discharged on September 8, 2014.  (AR 476-485, 531-
5  32, 584, 590-593.)

6  Then, roughly four months later, on January 12, 2015, she was admitted to Renown Regional Medical Center again on a legal hold after she exhibited paranoid delusions and hallucinations. The impression was that she had bipolar disorder, and again it was recommended that she be transferred to a psychiatric facility for evaluation and treatment.  Once admitted as an inpatient, she was described as uncooperative at times due to ongoing paranoia, and pleasant and cooperative at other times. She was dysphoric, labile, had an affect inappropriate to content, her thought process was disorganized, she was illogical, and she had an impaired memory and fund of knowledge. She was diagnosed with psychotic disorder, and given the presence of hallucinations, delusions and paranoia, a diagnosis of schizophrenia was probable once a timeline could be established. She was started on Risperdal, and she gradually improved. She was discharged on January 28, 2015. The discharge diagnosis included mood disorder. (AR 467-475, 605-606, 612, 634-38, 645-47.)

Less than four months later, on May 16, 2015, she was admitted to Saint Mary's Regional Medical Center with notes that she was suicidal, paranoid, and experiencing hallucinations. She was placed on a seventy-two-hour suicide hold, and referred for a psychological evaluation. On examination, she had poor judgment and insight, flight of ideas, and poor recall. She reported she had been off of her medications for two weeks, and was unable to manage her thought process or care for herself. On May 17, 2015, she was unable to give a history due to her psychosis and degree of decompensation. She made almost no eye contact; psychomotor retardation was present, and there was significant latency of speech; she had delusional and paranoid content; she had poor judgment. She was assessed with a principal diagnosis of psychotic disorder. She was restarted on Risperdal.  She was discharged on July 1, 2015, with a diagnosis of schizoaffective disorder. (AR 672-685.)

On July 20, 2015, her anxiety and taking psychotropic medications were assessed. (AR 457.) The importance of taking the medications was stressed again on August 3, 2015. (AR 458.) On August 31, 2015, Plaintiff reported that she was taking her medications as prescribed, and inquired about ways to socialize and meet more friends. (AR 455.) On September 16, 2015, she was grieving her boyfriend's death, and felt sad, though she was not crying as much. (AR 452.) She reported her depression and anxiety levels were a 3-4 on a scale of 1-10. (AR 452.) There was a plan to decrease her Risperdal and follow up. (AR 452.) At that time, she had an appropriate affect, was cooperative, had fair insight and intact judgment, some mild cognitive problems, a dysphoric mood, and was anxious. (AR 452.) Her diagnosis was schizoaffective disorder. (AR 452.) On October 2, 2015, she reported that she was successful in taking her medications. (AR 449.) On October 19, 2015, she indicated she felt sad regarding the loss of her significant other, but was taking her medications and felt like she was getting better. (AR 448.)

**2. The ALJ's Findings Relative to Plaintiff's Mental Impairments**

The ALJ noted that Plaintiff claimed she had bipolar disorder, diagnosed two months prior to the hearing; had seen a psychiatrist four weeks prior to the hearing and had been on medication for two months, but she did not feel it was helping; she was not seeing a counselor or therapist; she was not sure if she had been hospitalized the prior May; she did not describe current mania, but did when she drank alcohol (which she had a few weeks prior, but it had tapered off); and she managed her medication on a daily basis by herself. (AR 28.)

While Plaintiff alleged disability due to depression and anxiety, the ALJ noted that the objective record did not document a severely disabling condition, citing treatment notes that consistently documented her psychotic symptoms as well controlled/stable with medication, and that she tolerated the medication without complaints of untoward side effects. (AR 29.) The ALJ went on to accurately summarize Plaintiff's mental health records, including the three inpatient stays that took place after the consulting psychologists rendered their opinions. (AR 29-31.)

The ALJ then discussed Dr. Wildman's psychological consultative examination on January 24, 2014, accurately summarizing the report and opinions rendered. The ALJ assigned

Dr. Wildman's opinions significant weight, citing their consistency with the overall record.

Finally, the ALJ noted the State agency reviewing psychologists' opinions that Plaintiff's mental impairment was non-serve; that she had no limitations in activities of daily living; she had mild restrictions in social functioning, as well as mild difficulties in concentration, persistence, or pace; and no episodes of decompensation. (AR 32.) The ALJ afforded those opinions partial weight because they were not entirely consistent with the record as a whole. (AR 32.)

Again, the ALJ found Plaintiff's severe impairments included PTSD, and the ALJ limited Plaintiff to occasional interaction with the public in terms of her RFC. (AR 25, 27.)

**3. Did the ALJ have a duty to further develop the record in light of the subsequent inpatient mental health treatment records?**

Plaintiff argues that given the materiality of the new evidence concerning her subsequent mental hospitalizations, the ALJ should have utilized the help of a medical expert as part of the duty to fully develop the record, which Plaintiff acknowledges is triggered when the record contains ambiguous evidence or the record is inadequate to allow for proper evaluation of evidence. (ECF No. 14 at 7.)

Plaintiff is correct that the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 830 F.3d 1273, 1288 (9th Cir. 1996)). This is the case whether the claimant is represented by counsel or not. *Id.* "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id.* (citation omitted).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (citations omitted). If the record establishes an ambiguity or inadequacy, a specific finding by the ALJ is not necessary to trigger the duty to develop the record. *See id.* "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* (citations omitted). The ALJ may also order a

consultative examination. *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001).

As such, the court must consider whether there was an ambiguity or the record was inadequate to allow the ALJ to properly evaluate the evidence, triggering the duty to further develop the record. The court concludes there was.

The ALJ gave Dr. Wildman's opinions significant weight in formulating Plaintiff's RFC, knowing that Dr. Wildman did not have the benefit of reviewing Plaintiff's recent records or evaluating her after her three inpatient hospitalizations which presented new diagnoses as well as symptoms that were markedly different from those she exhibited prior to and at the time she was evaluated by Dr. Wildman. These new records presented an ambiguity in the record concerning the continued applicability of the opinions rendered by Dr. Wildman regarding Plaintiff's mental abilities. As such, the ALJ should have re-contacted Dr. Wildman for a record review and supplemental consultative psychological and evaluation because the record was inadequate to assess the functional limitations caused by Plaintiff's mental impairments given the stark turn her condition took after Dr. Wildman had rendered his opinions. *See e.g.* 20 C.F.R. § 404.1519a(b), § 416.919a(b)(4) (providing that a consultative examination may be required when the evidence is sufficient to allow a determination on the claim, such as when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established."); 20 C.F.R. § 404.1520b (evidence is inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous); *see also Tacket v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals, and ALJ's observation at the hearing of the claimant does not constitute substantial evidence to support mental RFC assessment).

The Commissioner argues that the ALJ may rely on relevant medical opinions no matter when they were issued, if they are consistent with the evidence in the record. (ECF No. 17 at 5.) The is true, *but,* the opinions must be *consistent* with the evidence in the record. Here, the symptoms Plaintiff described and the records Dr. Wildman reviewed in rendering his opinions concerning Plaintiff's mental limitations were *not consistent* with the events described in the subsequent mental health records. Before Dr. Wildman saw Plaintiff, she had undergone very

minimal mental health treatment. At that time, she had reported depression and anxiety, but did not have suicidal ideations or hallucinations. Her thought process was logical, her memory, attention, concentration, judgment and insight were intact. She had not received treatment prior to that time, let alone been an inpatient in a psychiatric facility. Her subsequent records stand in stark contrast. She was taken to the hospital and then admitted for evaluation and treatment on an involuntary basis three times in some eight months under precarious circumstances. She exhibited suicidal and homicidal ideations, hallucinations and paranoid delusions characterized as psychosis, which was not present before. She had poor insight, judgment, concentration, and impulse control, and was illogical, with an impaired memory and disorganized thought process.

Insofar as the Commissioner argues that the ALJ reviewed the entire record to determine there was no disabling mental condition, and that the symptoms were well controlled or stable with medication, the court does not agree that argument carries the day. The Commissioner relies on *Warre v. Commissioner of Social Security Administration*, 439 F.3d 1001, 1006 (9th Cir. 2006). *Warre* does state that an impairment that "can be controlled effectively with medication [is] not disabling for the purpose of determining eligibility for SSI benefits." *Id*. (citations omitted). *Warre* did not involve a discussion of mental impairments.

As Plaintiff points out, this ignores the probability that the inability to maintain medication compliance is a result of the underlying mental illness. The Ninth Circuit has noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment." *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6thCir. 1989)). More recently, the Ninth Circuit stated: "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin,* 759 F.3d 995, n. 24 (9th Cir. 2014) (citing *Martinez v. Astrue,* 630 F.3d 693, 697 (7th Cir. 2011); *Spiva v. Astrue,* 628 F.3d 346, 351 (7th Cir. 2010); *Pate-Fires v. Astrue,* 564 F.3d 935, 945 (8th Cir. 2009)).

The court also finds the Eighth Circuit's statement in this regard persuasive: "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and

usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse." *Pate-Fires v. Astrue,* 564 F.3d 935, 945 (9th Cir. 2009) (internal citations and quotation marks omitted, alterations original). In *Pate-Fires*, the Eight Circuit concluded there was no medical evidence in the record to indicate the claimant's failure to follow the prescribed treatment was something other than a manifestation of her schizoaffective or bipolar disorder. *Id.* at 946.

Here, as in *Pate-Fires*, the medical records at least suggest the possibility that Plaintiff's medication noncompliance was a result of her mental illness itself. The record contains several notations that Plaintiff did not like taking her medications, that she lacked insight into her mental illness, and that she eventually was subject to involuntary inpatient treatment as opposed to seeking voluntary treatment. The ALJ's failure to evaluate whether the medication compliance was the result of her diagnosed mental conditions improperly punished Plaintiff. Additionally, while Plaintiff experienced gradual improvement on antipsychotic medication during each of the three inpatient stays, she was still admitted for fourteen, sixteen, and then forty-seven days before she was deemed stable enough for discharge.

In sum, the court finds there was an ambiguity as to whether Dr. Wildman's opinions on Plaintiff's mental impairments and abilities continued to apply that triggered the ALJ's duty to further develop the record.

Since there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the evidence were properly evaluated, remand for further proceedings is appropriate.

Therefore, it is recommended that the case be remanded for further administrative proceedings to: assess the severity of Plaintiff's mental health impairments, and in particular the schizoaffective and bipolar disorder diagnoses noted in her more recent mental health records; order a supplemental consultative mental evaluation where the examiner has the benefit of Plaintiff's most recent mental health records; and, determine the impact any opinions rendered in connection with the supplemental consultative examination have on Plaintiff's RFC and the disability determination.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Plaintiff's motion; **DENYING** the Commissioner's cross-motion; and, **REMANDING** this matter for further administrative proceedings consistent with this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: April 19, 2018.

*[signature]*
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE